**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| LUXOTTICA OF AMERICA INC., | |
| Plaintiff, | Case No.  1:20CV698 |
| v. | Judge _____ |
| ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, | **COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BREACH OF GOOD FAITH AND FAIR DEALING;** |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff Luxottica of America Inc., (hereafter "Luxottica") alleges as follows:

## INTRODUCTION

1.      This is a civil action for declaratory judgment and damages arising from Defendant's breach of its contractual obligations under multiple insurance policies.  These policies provide primary and excess insurance coverage for claims related to professional optical services performed at LensCrafters locations, which are owned and operated by Luxottica.  The policies cover any error or omission in the practices of optical services or optometry, including fittings, filling prescriptions, and sales and marketing.  The policies obligate Defendant to defend and indemnify Luxottica against liability covered under the policies.

2.      Defendant breached its contractual obligations to Luxottica with respect to class actions filed in California, Florida, and New York that were subsequently consolidated in the U.S. District Court for the Eastern District of New York.  *Allegra, et al. v. Luxottica Retail North*

1

*America*, 17-cv-5216-PKC-RLM ("AccuFit Actions" or the "underlying litigation"). The underlying claims seek to impose liability on Luxottica for alleged errors and omissions in connection with the AccuFit Digital System ("AccuFit System"), which was used by LensCrafters opticians and trained associates to fit lenses for prescription eyewear purchases. At a critical time in the underlying litigation, Defendant has breached its contractual obligations to its policyholder by wrongfully reversing its earlier acceptance of defense costs coverage for the AccuFit Actions, denying coverage for defense and indemnity, and demanding repayment of prior defense costs. By the wrongful and unreasonable conduct as alleged herein, Defendant has breached its duty of good faith and is subject to bad faith liability.

3. Luxottica seeks, *inter alia*, a declaration of the present and future rights, duties and liabilities of the parties under the insurance policies issued by Defendant with respect to the AccuFit Actions. In particular, Luxottica seeks a declaratory judgment that Defendant has a duty to defend Luxottica in the underlying claims and is in breach of that duty. Luxottica also seeks a declaratory judgment that Defendant has a duty to indemnify Luxottica for any judgment or settlement in the underlying claims. Luxottica further seeks money damages and other relief for Defendant's breaches of its contractual obligations and for Defendant's breach of its duty of good faith, as more specifically set forth below.

## PARTIES

4. Luxottica is an Ohio corporation with its principal place of business in Mason, Ohio. Luxottica is insured under each of the relevant insurance policies identified in this Complaint. Effective December 31, 2018, Luxottica Retail North America Inc. changed its name to Luxottica of America Inc.

5.      Upon information and belief, defendant Allianz Global Risks US Insurance Company (hereafter "Allianz") is an Illinois corporation with its principal place of business in Chicago, Illinois.

## JURISDICTION

6.      This Court has jurisdiction under 28 U.S.C. §§ 1332 and 2201.  There is complete diversity of citizenship between Luxottica and Allianz, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

7.      Venue is proper under 28 U.S.C. § 1391.  For purposes of venue, Allianz is deemed to reside in this District because it is subject to the personal jurisdiction of the Court with respect to this action.  Venue is also proper because a substantial part of the events or omissions giving rise to this dispute occurred in this District.  The Allianz insurance policies were issued to a First Named Insured headquartered in Warren County, Ohio; they insured multiple entities based in Warren County, including Luxottica; and the broker of record for the Allianz policies was located in Hamilton County, Ohio.

## FACTUAL ALLEGATIONS

### A.      The Policyholder

8.      Luxottica operates over 900 retail locations under the trade name "LensCrafters."  LensCrafters locations dispense prescription eyewear and provide consumers with a full range of optometric and optical services.  LensCrafters locations are staffed with opticians, trained associates, and either an employed optometrist (where permitted by law) or affiliated independent optometrist.

9.      An optometrist is a licensed doctor who can conduct eye examinations, write prescriptions for corrective lenses, and diagnose eye conditions.  An optician is a healthcare practitioner who dispenses corrective lenses and performs fittings.  Many states, including Ohio, require licensing or certification for opticians.  Trained associates are Luxottica employees who are trained to assist opticians with their duties.

10.      Customers who visit LensCrafters locations can receive eye examinations and obtain prescriptions from an experienced optometrist; have their eyewear measured and fitted by an optician or trained associate; and have their prescriptions filled at Luxottica's lens manufacturing facilities.

11.      Luxottica uses the AccuFit System to digitally capture five measurement parameters with respect to how a customer's eyes line up with a frame.  The measurements captured by AccuFit include: pupillary distance, segment height, vertex distance, pantoscopic tilt and frame wrap.  These measurements are used to properly place the prescription in the ophthalmic lenses during the manufacturing process.   The AccuFit System replaced traditional methods of measurement such as pupilometers and hand-held rulers.

**B.      The Primary Policies**

12.      Between 2012 and 2017, Luxottica purchased multiple insurance policies from Allianz to protect against claims related to the professional optometric and optical services described in paragraphs 8 to 11 above.

13.      Allianz issued the following Commercial General Liability Policies covering the period December 31, 2012 to December 31, 2017 (hereafter, collectively the "Primary Policies"):

a. Allianz issued Commercial General Liability Policy No. CGL 2004064, effective December 31, 2012 to December 31, 2013 ("2013 Primary Policy").

b. Allianz issued Commercial General Liability Policy No. CGL 2004738, effective December 31, 2013 to December 31, 2014 ("2014 Primary Policy"), a true and correct copy of which is attached hereto as Exhibit 1. This policy was a renewal of the 2013 Primary Policy, which contained the same material terms.

c. Allianz issued Commercial General Liability Policy No. CGL 2005519, effective December 31, 2014 to December 31, 2015.  This policy was a renewal of the 2014 Primary Policy and contained substantially the same terms.

d. Allianz issued Commercial General Liability Policy No. CGL 2006358, effective December 31, 2015 to December 31, 2016.  This policy was a renewal of Policy No. CGL 2005519, and contained substantially the same terms as the 2014 Primary Policy.

e. Allianz issued Commercial General Liability Policy No. CGL 2008179, effective December 31, 2016 to December 31, 2017.   This policy was a renewal of Policy No. CGL 2006358, and contained substantially the same terms as the 2014 Primary Policy.

14. Each of the Primary Policies contains an Optical Professional Liability Endorsement (the "Primary Optical Endorsement"), which provides coverage for errors and

omissions in prescribing, fitting, filling, sales, and distribution of ophthalmic lenses. Specifically, coverage is provided for:

> damages because of any error or omission in providing professional services in the practices of optometry or optical services by you or on your behalf … Such services include but are not limited to examinations, referrals, prescribing, fitting filing [filling], selling, demonstration and distributing ophthalmic lenses and similar products, but do not include surgery.

15.     Luxottica is an insured under each Primary Policy, including each Primary Optical Endorsement.  Each Primary Optical Endorsement provides that Allianz has the "duty to defend the insured against any 'suit' seeking damages" as described above.  The term "suit" is defined to include a civil lawsuit.

16.     The Primary Policies require Luxottica to satisfy a retention of $558,000 for each occurrence.  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Luxottica has satisfied the retention for the AccuFit Actions though the payment of defense costs.

17.     Luxottica has complied with all relevant terms and conditions of the Primary Policies, including the Primary Optical Endorsements, except to the extent the performance of such terms and conditions has been excused by Allianz's conduct, and is entitled to all benefits of the Primary Policies, including the Primary Optical Endorsements.  All actions taken by Luxottica with respect to the AccuFit Actions have been reasonable, and no action by Luxottica has prejudiced the ability of Allianz to fulfill its contractual obligations.

## C.     The Umbrella Policies

18.     Allianz issued the following Commercial Umbrella Policies covering the period December 31, 2012 to December 31, 2017 (hereafter, collectively the "Umbrella Policies"):

a.  Allianz issued Commercial Umbrella Liability Policy No. ULA 2004065, effective December 31, 2012 to December 31, 2013 ("2013 Umbrella Policy"). This policy provides excess coverage above the 2013 Primary Policy.

b.  Allianz issued Commercial Umbrella Liability Policy No. ULA 2004739, effective December 31, 2013 to December 31, 2014 ("2014 Umbrella Policy"), a true and correct copy of which is attached hereto as Exhibit 2. This policy provides excess coverage above the 2014 Primary Policy. The 2014 Umbrella Policy was a renewal of the 2013 Umbrella Policy, which contained the same material terms.

c.  Allianz issued Commercial Umbrella Liability Policy No. ULA 2005520, effective December 31, 2014 to December 31, 2015. This policy provides excess coverage above Allianz Commercial General Liability Policy No. CGL 2005519. It was a renewal of the 2014 Umbrella Policy and contained substantially the same terms.

d.  Allianz issued Commercial Umbrella Liability Policy No. ULA 2006359, effective December 31, 2015 to December 31, 2016. This policy provides excess coverage above Allianz Commercial General Liability Policy No. CGL 2006358. It was a renewal of Commercial Umbrella Policy No. CGL 2005520, and contained substantially the same terms as the 2014 Umbrella Policy.

e.  Allianz issued Commercial Umbrella Liability Policy No. ULA 2008181, effective December 31, 2016 to December 31, 2017. This policy provides

excess coverage above Allianz Commercial General Liability Policy No. CGL 2008179. It was a renewal of Commercial Umbrella Policy No. CGL 2006359, and contained substantially the same terms as the 2014 Umbrella Policy.

19.     Each of the Umbrella Policies contains a Professional Liability Follow-Form Endorsement ("Umbrella Optical Endorsement") that provides excess coverage over the Primary Optical Endorsement in the underlying Primary Policies. Each Umbrella Optical Endorsement matches the terms and conditions of the underlying Primary Optical Endorsements. Specifically, the Umbrella Optical Endorsement provides coverage for "the rendering or failure to render any professional services and any act, error, omission, malpractice or mistake of a professional nature" to the same extent as the coverage provided by the Primary Optical Endorsement in the primary policies. Each Schedule of Underlying Insurance in the Umbrella Policies expressly references the Primary Optical Endorsement coverage from each respective underlying Primary Policy.

20.     Luxottica is an insured under each Umbrella Policy, including each Umbrella Optical Endorsement. The Umbrella Optical Endorsements follow the terms of the underlying Primary Optical Endorsement and thus provide that Allianz has a duty to defend Luxottica against any "suit" seeking damages that may be covered under the policies. The term "suit" is defined to include a civil lawsuit.

21.     Luxottica has complied with all relevant terms and conditions of the Umbrella Policies, including the Umbrella Optical Endorsements, except to the extent the performance of such terms and conditions has been excused by Allianz's conduct, and is entitled to all benefits of the Umbrella Policies, including the Umbrella Optical Endorsements. All actions taken by

Luxottica with respect to the AccuFit Actions have been reasonable, and no action by Luxottica has prejudiced the ability of Allianz to fulfill its contractual obligations.

**D.**    **The Excess Policies**

22.     Allianz's parent entity Allianz Global Corporate & Specialty ("Allianz Global") issued to Luxottica's parent entity Luxottica Group S.p.A. ("Luxottica Group") an additional layer of excess policies that provide excess coverage over the Umbrella Policies. These policies (hereafter, collectively the "Excess Policies") cover the period December 31, 2012 to December 31, 2017 as follows:

      a.   Allianz Global issued to Luxottica Group Third-Party Civil Liability Policy No. 030000708, effective December 31, 2012 to December 31, 2013. This policy provides excess coverage above the 2013 Umbrella Policy. This policy was truncated as of June 30, 2013 and reissued as Allianz Third-Party Civil Liability Policy No. 030334289, effective June 30, 2013 to December 31, 2014. Policy No. 030334289 provides excess coverage above the 2013 Umbrella Policy and the 2014 Umbrella Policy.

      b.   Allianz Global issued to Luxottica Group Third-Party Civil Liability Policy No. 030001905, effective December 31, 2014 to December 31, 2016. This policy provides excess coverage above Allianz Commercial Umbrella Liability Policies No. ULA 2005520 and ULA 2006359.

      c.   Allianz Global issued to Luxottica Group a Third-Party Civil Liability Policy effective December 31, 2016. This policy provides excess

coverage above Allianz Commercial Umbrella Liability Policy

No. ULA 2008181.

23.     Luxottica is an insured under each Excess Policy.  Each of the Excess Policies

contains a Professional Civil Liability Section that provides coverage for Luxottica on the same

terms stated in the underlying Primary Policies and Umbrella Policies.  The Excess Policies are

available to cover any loss in excess of the limits of the respective Umbrella Optical

Endorsements.

24.     Luxottica has complied with all relevant terms and conditions of the Excess

Policies, except to the extent the performance of such terms and conditions has been excused by

Allianz Global's conduct, and is entitled to all benefits of the Excess Policies.  All actions taken

by Luxottica with respect to the AccuFit Actions have been reasonable, and no action by

Luxottica has prejudiced the ability of Allianz Global to fulfill its contractual obligations.

25.     This Complaint does not name Allianz Global as a defendant or allege claims

for recovery under the Excess Policies because those claims are not ripe.  Allianz Global's duties

under those policies will not be triggered unless and until the limits of the underlying Umbrella

Policy are exhausted by the payment of defense and settlement costs in the AccuFit Actions.

Luxottica reserves the right to amend this Complaint to assert claims against Allianz Global for

recovery under the Excess Policies.

### E.     The AccuFit Actions

26.     In September 2017, three class action lawsuits were filed against Luxottica

Retail North America in California, Florida, and New York, arising out of the use of a digital

measurement system known as the AccuFit System at LensCrafters retail locations.  The AccuFit

System was used by LensCrafters opticians and trained associates to perform fittings and to take measurements used by Luxottica to fill prescriptions for ophthalmic lenses.

27.     On December 8, 2017, the three cases were consolidated by court order in the Eastern District of New York as *Allegra, et al. v. Luxottica Retail North America*, 17-cv-5216-PKC-RLM.  The consolidated action is currently pending.

28.     A Consolidated Amended Complaint was filed on December 12, 2017.  A true and correct copy of the Consolidated Amended Complaint is attached hereto as Exhibit 3.   A Second Amended Consolidated Complaint ("Second Amended Complaint") was filed on September 21, 2018.   The Second Amended Complaint is currently the operative pleading that establishes Allianz's duty to defend.  A true and correct copy of the Second Amended Complaint is attached hereto as Exhibit 4.

29.     The Second Amended Complaint includes additional class representatives, but the material allegations remained unchanged from those in the Consolidated Amended Complaint.  Luxottica has denied the allegations of the Second Amended Complaint and disputes that it has any liability to the plaintiffs.

30.     The plaintiffs in the underlying litigation ("underlying plaintiffs") made the following allegations in the Second Amended Complaint:

   a.   The underlying plaintiffs allege that Luxottica uses the AccuFit System at LensCrafters retail locations to take measurements of pupillary distance (i.e., the distance between the pupils).  See Exhibit 4 (Second Amended Complaint), ¶¶ 1, 29.  The underlying plaintiffs allege that the AccuFit System is used by "attaching a 'fit sensor' to the frames selected by customers and using cameras

and lasers to take measurements, including PD [pupillary distance]."  See Exhibit 4 (Second Amended Complaint), ¶ 30.

b.  The underlying plaintiffs allege that during the lens manufacturing process, "Laboratory technicians use the customer's pupillary distance measurement(s) to locate the optical center of each lens."  See Exhibit 4 (Second Amended Complaint), ¶ 22.

c.  The underlying plaintiffs allege that Luxottica, in marketing its optical services, stated that the AccuFit System provides measurements of pupillary distance that are accurate within 0.1 millimeter and results in prescription eyewear that is "far more accurate than prescription eyeglasses manufactured based on traditional PD [pupillary distance] measurements."  See Exhibit 4 (Second Amended Complaint), ¶¶ 31, 33.

d.  The underlying plaintiffs further allege that Luxottica's lens manufacturing process rounded measurements to the nearest millimeter and that "LensCrafters equipment can only measure to a whole millimeter."  See Exhibit 4 (Second Amended Complaint), ¶ 49.

e.  The underlying plaintiffs allege that Luxottica's marketing statements regarding the accuracy of the AccuFit System were misleading because the Accufit measurements are not translated into the lens manufacturing process. See Exhibit 4 (Second Amended Complaint), ¶¶ 41-42, 132, 134.

f.  The underlying plaintiffs further allege that Luxottica employees tout the accuracy of the AccuFit System to customers and avoid answering questions

about the lens manufacturing process. See Exhibit 4 (Second Amended
Complaint), ¶¶ 3, 47-48.

g.  The underlying plaintiffs allege that they would not have purchased
prescription eyeglasses from Luxottica or would not have paid as much for
them, but for the allegedly misleading statements.  See Exhibit 4 (Second
Amended Complaint), ¶ 94.

31.    The central claim in the Second Amended Complaint relates to the use of the
AccuFit System to measure customers' pupillary distance for purposes of filling prescriptions
and fitting lenses.  Plaintiffs allege that Luxottica's laboratories could not provide prescription
lenses that match the precision of the Accufit measurements.  Plaintiffs further claim that
Luxottica made misleading statements in marketing its optical services, including in alleged one-
on-one discussions between Luxottica employees and customers.  Plaintiffs claim damages based
on the alleged difference between what they paid for their eyewear and what they allegedly
would have paid in the absence of representations about Luxottica's optical services.

32.    The Second Amended Complaint seeks compensatory damages, restitution,
disgorgement, punitive damages, injunctive relief, and attorneys' fees from Luxottica.

F.    **Allianz's Initial Defense and Subsequent Denial of Coverage**

33.    In September 2017, Luxottica timely tendered the AccuFit Actions to Allianz
for defense.

34.    In a letter dated November 27, 2017 (the "November 2017 Coverage Letter"),
Allianz agreed to defend the underlying litigation under a reservation of rights, pursuant to the
Primary Optical Endorsement found in the Primary Policies and subject to Luxottica's payment
of the $558,000 self-insured retention.  That letter stated, "Allianz Global agrees to defend

Luxottica against the Underlying Actions pursuant to the terms of the Optical Professional

Liability Endorsement, after Luxottica has paid all appropriate sums pursuant to its Self-Insured

Retentions." In this letter, Allianz also confirmed that the Umbrella Policies provide excess

coverage that follows form to the Primary Optical Endorsement in the Primary Policies.

35.     Following receipt of the November 2017 Coverage Letter, Luxottica incurred

defense costs and fees in excess of the $558,000 retention designated in the Policies. Pursuant to

its obligations under the policies, during the next two and a half years, Allianz paid fees and

costs incurred by Luxottica's defense counsel in the AccuFit Actions. Allianz initially paid

defense costs under the Primary Optical Endorsement in one of the Primary Policies. After the

applicable limits of that policy were exhausted, Allianz paid defense costs under the Umbrella

Optical Endorsement for the same policy year.

36.     Allianz's coverage position regarding the AccuFit Actions remained the same

through the filing of the Consolidated Amended Complaint in December 2017 and the filing of

the Second Amended Complaint in September 2018.

37.     On August 7, 2020, almost three years after the commencement of the AccuFit

Actions, and almost two years after the filing of the Second Amended Complaint, Allianz sent

Luxottica a letter reversing its coverage position (the "August 2020 Coverage Denial"). Allianz

stated that it had changed its mind regarding coverage and contended that the underlying claims

are not covered by the Primary Policies or the Umbrella Policies. The August 2020 Coverage

Denial provides no reasonable justification for this reversal of position. The letter fails to

identify any new claims or allegations in the AccuFit Actions that would justify Allianz's

reversal. Nor did Allianz cite to any other new developments in the underlying litigation to

support its coverage denial.

38.     As reflected in the August 2020 Coverage Denial, Allianz now maintains it has no duty to defend or indemnify Luxottica under the Primary Policies or the Umbrella Policies for the claims in the AccuFit Actions.  It has refused to pay any further amounts for the defense of the AccuFit Actions, including amounts submitted for payment prior to the August 2020 Coverage Denial.  Allianz has also demanded reimbursement of all defense costs previously paid.

39.     Allianz's reversal of its coverage position is unreasonable, incorrect, and without reasonable justification.  The AccuFit Actions are covered under the Allianz Primary Policies and Umbrella Policies because the claims arise out of the optical services Luxottica provides to customers.  In addition:

(a)     The claims relate to Luxottica's conduct in prescribing, fitting, and filling prescriptions for ophthalmic lenses.  Plaintiffs claim that the digital measurements taken by opticians and trained associates did not translate into improved vision, because Luxottica did not manufacture lenses to the precision of the AccuFit System's measurements.

(b)     Plaintiffs also allege errors and omissions by Luxottica in selling and distributing ophthalmic lenses.  Plaintiffs claim they were injured because Luxottica, in marketing its optical services, made misleading statements that suggested the AccuFit System would produce more accurate lenses.

40.     These claims alleged in the AccuFit Actions fall squarely within the coverage provided by the Primary Optical Endorsement and the Umbrella Optical Endorsement for "damages because of any error or omission in providing professional services in the practices of optometry or optical services."

41.     The claims in the AccuFit Actions trigger coverage under all five policy years from December 31, 2012 through December 31, 2017, making the full policy limits of the Primary Policies, Umbrella Policies, and Excess Policies available for a covered loss.

42.     Allianz's abrupt and wrongful disavowal of its defense obligation has deprived Luxottica of the benefit of insurance coverage and caused Luxottica substantial harm.  Allianz has stopped paying for the defense of the AccuFit Actions, forcing Luxottica to incur substantial amounts of defense costs.  Allianz has wrongfully demanded reimbursement from its policyholder of all defense costs previously paid.  Allianz has forced Luxottica to fight a two-front war, in which Luxottica must defend the AccuFit Actions at its own expense and pursue this coverage lawsuit to obtain the benefits due from Allianz under the insurance policies. Allianz has breached its contractual duties under the Primary Policies and Umbrella Policies, and a present controversy exists with respect to the parties' rights and obligations under the policies as described in this Complaint.

43.     Allianz's coverage denial was based solely on financial self-interest, divorced from any legal or factual issues related to the underlying claims.  In reversing its coverage position, Allianz put its own interests ahead of the interests of its insured.

44.     In or about September 2019, as the underlying litigation was in the expert discovery phase, Allianz realized that its payments for the defense of the AccuFit Actions would not be limited to a single Primary Policy.  Following this realization, Allianz grew increasingly concerned about the cost of the litigation, particularly in 2020 as costs continued to rise.  By approximately May 2020, senior claims officials at Allianz were focused on these matters, solely due to the projected costs.

45.     Shortly thereafter, Allianz stopped paying for the cost of defending the AccuFit Actions.  Allianz waited until August 7, 2020 to inform its policyholder that Allianz was renouncing its prior agreement to provide a defense.  The timing of Allianz's announcement constitutes oppressive conduct, as it came at a critical time in the underlying litigation when the parties were in the midst of briefing on class certification and Daubert motions.

46.     Allianz's decision to deny coverage was not based on a fair, reasonable, and objective consideration of the policy terms and the governing law.  Nor was it based on a reasonable assessment of the claims alleged in Second Amended Complaint, which had been filed in September 2018.  There were no new allegations made in the underlying action, no new rulings by the court, and no new case law that would justify Allianz's change in position.

47.     Allianz decided to deny coverage because the underlying litigation became more expensive than it had anticipated.  Allianz failed to consult with its policyholder before taking this drastic step.  It acted unilaterally to protect its own financial interest at the expense of its insured.  In doing so, Allianz breached its contractual obligations under the insurance policies, and violated its duty of good faith.

## FIRST CLAIM FOR RELIEF

### Declaratory Relief Regarding Allianz's Duty to Defend

48.     Luxottica hereby repeats and incorporates the allegations contained in all prior paragraphs of this Complaint as though fully set forth herein.

49.     The claims in the AccuFit Actions gave rise to a potential for coverage, and therefore, Allianz has a continuing duty under the terms of the Primary Policies and Umbrella Policies to defend Luxottica in the AccuFit Actions.  In breach of Allianz's duties under the policies, it has withdrawn its prior agreement to defend Luxottica in the AccuFit Actions.  For

the foregoing reasons, an actual and justifiable controversy presently exists between Luxottica and Allianz concerning Allianz's defense obligation in connection with the AccuFit Actions. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

50.    The issuance of a declaratory judgment by this Court will terminate some or all of the existing controversy between the parties.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief Regarding Allianz's Duty to Indemnify

51.    Luxottica hereby repeats and incorporates the allegations contained in all prior paragraphs of this Complaint as though fully set forth herein.

52.    Allianz has a duty under the terms of the Primary Policies and Umbrella Policies to indemnify Luxottica in full for all legal liabilities it may incur for settlements or judgments in connection with the AccuFit Actions. Allianz's duty to indemnify extends to the combined limits of the Primary Policies and the Umbrella Policies.

53.    Allianz has failed to acknowledge its duty to indemnify Luxottica, contending that there is no coverage under the Primary Policies or Umbrella Policies for the claims asserted in the AccuFit Actions. Luxottica seeks a declaration of rights regarding the duties of Allianz and its obligations under the Primary Policies and Umbrella Policies to indemnify Allianz for all legal liabilities in connection with the AccuFit Actions.

54.    For the foregoing reasons, an actual and justifiable controversy presently exits between Luxottica and Allianz concerning Allianz's defense obligation in connection with the AccuFit Actions. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

55.     The issuance of a declaratory judgment by this Court will terminate some or all of the existing controversy between the parties.

### THIRD CLAIM FOR RELIEF

**Breach of Contract for Failure to Pay Defense Costs**

56.     Luxottica hereby repeats and incorporates the allegations contained in all prior paragraphs of this Complaint as though fully set forth herein.

57.     Allianz breached the contracts of insurance by refusing to perform its duty to defend Luxottica in the AccuFit Actions and failing to fully pay for the attorneys' fees and costs incurred in the defense of those actions up to the relevant policy limits.

58.     As a direct result of Allianz's continuing breach of its insurance contracts, Luxottica has been injured by being deprived of the benefits of insurance coverage for the AccuFit Actions.  As of the date of filing this Complaint, Luxottica has incurred in excess of $1,000,000 in actual and consequential damages as a result of Allianz's breach.  These damages include, but are not limited to, attorneys' fees and costs incurred in defending the AccuFit Actions.

### FOURTH CLAIM FOR RELIEF

**Declaratory Relief Regarding Allianz's Claim for Reimbursement**

59.     Luxottica hereby repeats and incorporates the allegations contained in all prior paragraphs of this Complaint as though fully set forth herein.

60.     Allianz originally acknowledged its duty to defend Luxottica in the AccuFit Actions and paid in excess of $1,000,000 in defense costs in connection with those litigation matters.  In breach of Allianz's duties under the Primary Policies and Umbrella Policies, Allianz has renounced its earlier coverage position and now demands that Luxottica reimburse Allianz

for all prior defense costs paid to date.  Allianz does not have the right to obtain reimbursement for such prior defense cost payments.

61.     For the foregoing reasons, an actual and justifiable controversy presently exists between Luxottica and Allianz concerning Allianz's demand for reimbursement of defense costs previously paid in connection with the AccuFit Actions.  The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

62.     The issuance of a declaratory judgment by this Court will terminate some or all of the existing controversy between the parties.

### FIFTH CLAIM FOR RELIEF

**Breach of the Duty of Good Faith**

63.     Luxottica hereby repeats and incorporates the allegations contained in all prior paragraphs of this Complaint as though fully set forth herein.

64.     Allianz has a legal duty imposed by law due to the relationship of the parties to act in good faith in connection with Luxottica's request for coverage for the AccuFit Actions. Pursuant to this duty, Allianz was required to act fairly in providing its insureds with the benefits promised under the insurance policies; to exercise diligence, good faith, and fidelity in safeguarding its insureds' interests; to conduct a fair, reasonable, and objective investigation of the claim; to interpret the insurance policies is a fair and reasonable manner; and to adequately inform its insureds with respect to the nature and scope of its insurance coverage.  The duty of good faith also obligated Allianz **not** to deny coverage without reasonable justification, or take arbitrary positions, or place its own interests ahead of the interests of its insureds.

65.     Allianz has breached its duty of good faith with respect to the AccuFit Actions in numerous ways, including the following:

(c)     Allianz has denied coverage for the AccuFit Actions without reasonable justification.

(d)     Allianz has refused to honor its duty to defend without reasonable justification.

(e)     Allianz has arbitrarily and unreasonably changed its coverage position for financial reasons unrelated to the policy terms, the allegations in the underlying litigation, and the governing law.

(f)     Allianz has, without reasonable justification, reneged on its agreement to provide a defense for Luxottica.

(g)     Allianz has failed to conduct an objective and reasonable investigation of the claim.

(h)     Allianz has failed to perform a reasonable assessment of coverage, and chosen instead to disregard facts, ignore legal authority, and adopt unreasonable interpretations of policy terms.

(i)     Allianz has wrongfully and unreasonably demanded reimbursement for defense costs previously paid.

(j)     Allianz failed to consult with its policyholder regarding the coverage issues and its purported grounds for denying coverage before issuing the August 2020 Coverage Denial.

(k)     Allianz timed the announcement of its coverage denial for the purpose of oppressing its policyholder during a period of intense activity in the underlying litigation.

(l)     Allianz has placed its own financial interests above those of its insured by

denying coverage due to concerns about increased litigation costs and its

desire to avoid further payments.

66.     Allianz, in breach of the duty of good faith, acted without reasonable

justification in committing the wrongful acts described above for the purpose of withholding

from Luxottica the rights and benefits due under the insurance policies.

67.     By reason of the wrongful conduct alleged herein, Luxottica has sustained

damages in an amount yet to be determined, including, but not limited to, attorneys' fees and

costs incurred in obtaining coverage under the Primary Policies and Umbrella Policies.

## **PRAYER FOR RELIEF**

WHEREFORE, Luxottica prays for the following relief:

a.     With respect to the First Claim for Relief, a declaration that Allianz has had at all

relevant times a duty under the Primary Policies and Umbrella Policies to defend Luxottica in the

AccuFit Actions;

b.     With respect to the Second Claim for Relief, a declaration that Allianz has a duty

under the Primary Policies and Umbrella Policies to indemnify Luxottica in full for legal

liabilities incurred in connection with the AccuFit Actions;

c.     With respect to the Third Claim for Relief, judgment against Allianz and an award

of actual and consequential damages according to proof for Allianz's breach of contract, plus

interest as allowed by law;

d.     With respect to the Fourth Claim for Relief, a declaration that Luxottica has no

duty to reimburse Allianz for defense costs paid by Allianz in the AccuFit Actions;

e. With respect to the Fifth Claim for relief, judgment against Allianz and an award of actual and consequential damages according to proof for Allianz's breach of its duty of good faith, plus interest as allowed by law;

f. For Luxottica's costs of suit incurred herein; and

g. For such other and further relief as the Court deems appropriate.

Dated: September 7, 2020      By:    */s/ Michael R. Gladman*
     MICHAEL R. GLADMAN (OH Bar No. 0059797)
     *Trial Counsel*
     mrgladman@jonesday.com
     JONES DAY
     325 John H. McConnell Blvd., Suite 600
     Columbus, OH 43215
     Tel: (614) 281-3865

     RICHARD DENATALE (CA Bar No. 121416)
     *(Pro Hac Vice Application Forthcoming)*
     rdenatale@jonesday.com
     BRIAN D. MCDONALD (CA Bar No. 224204)
     *(Pro Hac Vice Application Forthcoming)*
     bdmcdonald@jonesday.com
     JONES DAY
     555 California Street, Suite 2600
     San Francisco, CA 94104
     Tel: (415) 626-3939

     *Counsel for Luxottica of America Inc.*

## JURY DEMAND

Luxottica respectfully requests a trial by jury on all issues so triable.


Dated:  September 7, 2020          By:    */s/ Michael R. Gladman*
                                         MICHAEL R. GLADMAN (OH Bar No.
                                         0059797)
                                         *Trial Counsel*
                                         mrgladman@jonesday.com
                                         JONES DAY
                                         325 John H. McConnell Blvd., #600
                                         Columbus, OH 43215
                                         Tel: (614) 281-3865

                                         RICHARD DENATALE (CA Bar No. 121416)
                                         *(Pro Hac Vice Application Forthcoming)*
                                         rdenatale@jonesday.com
                                         BRIAN D. MCDONALD (CA Bar No. 224204)
                                         *(Pro Hac Vice Application Forthcoming)*
                                         bdmcdonald@jonesday.com
                                         JONES DAY
                                         555 California Street, Suite 2600
                                         San Francisco, CA 94104
                                         Tel: (415) 626-3939

                                         *Counsel for Luxottica of America Inc.*