# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LUXOTTICA OF AMERICA, INC.,     :     Case No. 1:20-cv-698

       :

     Plaintiff,         :     Judge Timothy S. Black

       :

vs.       :

       :

ALLIANZ GLOBAL RISKS US     :

INSURANCE COMPANY,     :

       :

     Defendant.       :

## ORDER RESOLVING THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (Docs. 47, 50)

This civil action is before the Court on the parties' cross-motions for summary

judgment (Docs. 47, 50) and the parties' responsive memoranda (Docs. 51, 52, 53, 54).[1]

## I. BACKGROUND[2]

The dispute presented in these cross-motions for summary judgment is narrow:

whether Defendant Allianz Global Risks US Insurance Company ("Allianz"), under an

---

[1] Pursuant to the Calendar Order (Doc. 43), Luxottica filed a combined cross-motion for summary judgment and opposition to Allianz's motion for summary judgment (Docs. 50, 51); and Allianz filed a combined response in opposition to Luxottica's motion for summary judgment and reply in support of Allianz's motion for summary judgment (Docs. 52, 53). The combined filings (and each filing's attachments) are identical, but were docketed twice to capture both filings. For purposes of this Order, the Court will reference the lower-numbered document.

[2] Pursuant to the Court's Standing Order, each party filed a Statement of Proposed Undisputed Facts, as well as a Response to Proposed Statement of Undisputed Facts and a Statement of Disputed Issues of Material Fact. (Docs. 47-2, 50-2, 50-3, 52-2, 52-3, 54-2). Notably, the parties' do not generally dispute the actual underlying facts or documents, only whether certain facts and documents are relevant to the dispute and/or were presented properly to the Court. In this fact section, the Court details the material, undisputed facts related to interpreting the insurance policy – the issue at hand.

insurance policy purchased by Plaintiff Luxottica of America, Inc. ("Luxottica"), owes a duty to defend Luxottica in a class action lawsuit (the "Underlying Lawsuit").

### A.     The Parties

Luxottica operates retail locations and is more commonly known to the public as "LensCrafters." (Doc. 54-2 at ¶ 1). At LensCrafters' locations, Luxottica provides consumers with optical services including eyewear fittings, filling prescriptions, and selling ophthalmic lenses. (*Id*. at ¶ 2).[3] Allianz is the insurance company from which Luxottica purchased general commercial liability insurance. (*Id*. at ¶ 4).

### B.     The Insurance Policies

The parties agree that there are four Commercial General Liability Policies (the "Policy") relevant to this action, providing coverage for years 2013 through 2017. (*Id*.; *see* Doc. 50-6, Exs. 1–4). The parties agree that the terms contained in each of the Policies are substantially the same and/or the same for the purposes of this dispute. (Doc. 50-3 at ¶ 1).[4]

The Policy first outlines general commercial liability coverage in a section titled "Commercial General Liability Coverage Form." (Doc. 1-1 at PageID 40–55). This section describes coverage for "bodily injury," "personal and advertising injury," and

---

[3] Allianz denies these facts about Luxottica's business as immaterial for the Court's consideration on summary judgment; however, Allianz does not deny the substance. Thus, the Court considers them undisputed. And, in any event, providing some context on the parties will be helpful for the reader moving forward.

[4] It is undisputed that the Policy attached to Luxottica's Complaint is a true and correct copy of one of the Policies and may be considered for purposes of this Order. (Doc. 50-3 at ¶ 1). However, Luxottica then attaches additional copies of all Policies to its motion for summary judgment. For ease of citation, the Court will cite to the Policy attached to the Complaint.

"medical payments."  (*Id*.)  Luxottica does not argue that this section provides coverage for purposes of the current dispute.

In the Policy, added onto the "Commercial General Liability Coverage Form," are various exclusions and endorsements. (*See, e.g.* Doc. 1-1 at PageID 30, "Forms and Endorsement List").  The exclusions and endorsements discuss coverage and non-coverage for specific topics not discussed or in greater detail than the general policy. (*Id*.)  For example, there are forms and endorsements titled: "Exclusion – Asbestos Liability," "Fungi or Bacteria Exclusion," and "Named Insured Endorsement."  (*Id*. at PageID 30–31).  At issue in the current dispute is the Optical Professional Liability Endorsement (the "OPL Endorsement"), which provides:

> We will pay those sums that the insured legally obligated to pay as damages because of any error or omission in providing professional services in the practices of optometry or optical services by your or on your behalf.  Such services can be provided by any optician, optometrist or anyone with whom you have a contract, agreement, or relationship including independent contractors and volunteers.  Such services include but are not limited to examinations, referrals, prescribing, fitting filing, selling, demonstration and distributing ophthalmic lenses and similar products, but do not include surgery….We will have the right and duty to defend the insured against any "suit" seeking damages to which this insurance applies.  However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claims or "suit" that may result.

(Doc. 54-2 at ¶ 5–6; Doc. 1-1 at PageID 92).

The parties also have contracted for Umbrella Policies. (Doc. 52-2 at ¶ 7). Each of the Umbrella Policies provides a coverage limit of $27,000,000 per occurrence. (Doc. 52-2 at ¶ 8). The Umbrella Policies further provide:

> This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services and any act, error, omission, malpractice or mistake of a professional nature committed by the "insured" or any person for whom the "insured" is legally responsible. However, if insurance for such "bodily injury", "property damage", "personal injury" or "advertising injury" is provided by a policy listed in the Schedule of Underlying Insurance: 1. This exclusion shall not apply; and 2. The insurance provided by this policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

(Doc. 54-2 at ¶ 9).

### C.    The Underlying Lawsuit

The Underlying Lawsuit is a consolidated class action: *Yesinia Ariza, et al., v. Luxottica Retail North America, an Ohio Corporation d/b/a LensCrafters*, No. 1:17-cv-05216-PKC-RLM (E.D.N.Y.). (Doc. 50-3 at ¶ 3; Doc. 52-2 at ¶ 10–11). The Underlying Lawsuit includes three actions filed against Luxottica: *Kathleen Infante, et al. v. Luxottica Retail North America*, Case No. 3:17-cv-05145 (N.D. Cal. Sept. 5, 2017); *Yesenia Ariza and David Soukup, et al. v. Luxottica Retail North America*, Case No. 1:17-cv-05216 (E.D.N.Y. Sept. 5, 2017); and *Gracelynn Tenagila, et al. v. Luxottica Retail North America*, Case No. 2:17-cv-14311 (S.D. Fla. Sept. 5, 2017). (*Id.*)

After the actions were consolidated, an amended complaint was filed on January 5, 2018, followed by a second amended complaint ("the Underlying Complaint") on

September 21, 2018. (Doc. 52-2 at ¶¶ 13–14). Pursuant to the Policy, Luxottica gave timely notice of the Underlying Lawsuit to Allianz. (Doc. 52-2 at ¶ 18).[5]

The Underlying Complaint contains allegations against Luxottica's AccuFit System. (*See generally*, Underlying Complaint). Luxottica introduced its AccuFit system in or around 2009. (*Id*. at ¶ 28). AccuFit was used by Luxottica to measure a customer's pupillary distance before manufacturing prescription eyeglasses. (*Id*. at ¶¶ 2, 29–31). AccuFit was allegedly used as a selling point for Luxottica, claiming that the system provided pupillary distance measurements "five times more accurate" than traditional measurements; thus, making better and more accurate prescription eyeglasses. (*Id*. at ¶¶ 3, 32). However, according to the Underlying Complaint, AccuFit could not provide more accurate prescription eyeglasses. (*Id*. at ¶ 41).

AccuFit was a failed system because, even with more accurate measurements, Luxottica's "decades-old" manufacturing equipment was incapable of producing eyeglasses with pupillary distance measurements that were "five times" more accurate than traditional methods. (*Id*. at ¶¶ 3–4, 42–44). The Underlying Complaint contains various allegations that Luxottica knew it was incapable of manufacturing eyeglasses with the level of precision that the AccuFit system measured, yet nevertheless pushed the AccuFit glasses to consumers. (*Id*. at ¶¶ 44–50).

---

[5] The Court takes judicial notice of the Underlying Complaint. Second Amended Complaint, *Yesinia Ariza, et al., v. Luxottica Retail North America, an Ohio Corporation d/b/a LensCrafters*, No. 1:17-cv-05216-PKC-RLM (E.D.N.Y. Sept. 21, 2018), ECF No. 50. The Underlying Complaint was also attached to Luxottica's motion for summary judgment. (Doc. 50-5 at Ex. 6). To avoid confusion of the docket numbers and for clarity, the Court hereinafter will cite the Underlying Complaint allegations as "Underlying Complaint at ¶ ____."

The Underlying Complaint is composed of the California Class, the Florida Class, and the New York Class. (*Id*. at ¶ 76.) Each class consists of residents of each state that purchased prescription eyeglasses from Luxottica from September 5, 2011 to the present. (*Id*.) As alleged, the questions of law and fact common to all the classes include:

      a.    Whether [Luxottica] misrepresented material facts about its manufacturing process, including the fact that AccuFit measurements could not be converted into the manufactured lenses;

      b.    Whether [Luxottica] omitted material facts about its manufacturing process, including the fact that AccuFit measurements could not be converted into the manufactured lenses;

      c.    Whether [Luxottica] engaged in deceptive acts or practices, including misrepresenting and/or omitting the fact that AccuFit measurements could not be converted into the manufactured lenses; and

      d.    Whether [Luxottica] falsely advertised its manufacturing process at the time of sale, including the fact that AccuFit measurements could not be converted into the manufactured lenses.

(*Id*. at ¶ 81).

The claims made against Luxottica in the Underlying Lawsuit include:

1.    Violation of the California Business and Professions Code § 17200, *et seq*., for unlawful, unfair, and/or fraudulent business practices, (*id*. at ¶¶ 87–96);

2.    Violation of the California Business and Professions Code § 17500, *et seq*., the "False Advertising Law," (*id*. at ¶¶ 97–102);

3.    Violation of the California Consumer Legal Remedies Act, Civil Code §§ 1761(a), 1770, for misrepresenting the certification, characteristics, and quality of goods to consumers, (*id*. at ¶¶ 103–111);

4.     Violation of the Florida Deceptive and Unfair Trade Practices Act §
       501.201, *et seq*., (*id*. at ¶¶ 112–119);

5.     Violation of the New York General Business Law § 349, *et seq*., which
       prohibits "deceptive acts or practices in the conduct of any business, trade
       or commerce in the furnishing of any service in" New York, (*id*. at ¶¶ 120–
       129);

6.     Violation of the New York General Business Law § 350, *et seq*., the state's
       false advertising law, (*id*. at ¶¶ 130–137);

7.     Quasi-contract and/or unjust enrichment, (*id*. at ¶¶ 138–142);

8.     Fraudulent misrepresentation, (*id*. at ¶¶143–146); and

9.     Fraudulent omission, (*id*. at ¶¶ 147–150).

The Underlying Plaintiffs in the Underlying Lawsuit seek various damages related
to their purchase of prescription eyeglass from Luxottica, including "[r]estitution of all
charges paid by Plaintiffs and the Class," "[d]isgorgement to Plaintiffs and the Class of
all monies wrongfully obtained and retained by Defendant;" "statutory damages,
penalties, [and] treble damages, as provided by law," and "injunctive relief," enjoining
Luxottica from continuing to make false statements about the AccuFit system.  (*Id*. at
Prayer for Relief, PageId 1110).  The parties do not dispute that the Underlying Plaintiffs
are not seeking damages from "bodily injury" or "property damage."

### D.     **Allianz Initially Defends**

On September 12, 2017, Sedgwick Claims Management Services, Inc.
("Sedgwick") sent a tender letter to Myron Wasiunec, a Senior Liability Claims
Specialist for Allianz, referencing the three lawsuits filed against Luxottica.  (Doc. 50-3
at ¶ 4; Doc 47-3 at Ex. 1).  The Sedgwick letter provided the contact information for

7

Luxottica representatives Jason Groppe and Adrienne Holiday-Singletary. (Doc 47-3 at Ex. 1).

On September 14, 2017, Wasiunec sent email correspondence to Groppe and Holiday-Singletary regarding the Sedgwick tender letter, acknowledging Luxottica's policy, and reserving all rights under the Policy while Allianz continued its investigation of the claims against Luxottica. (Doc. 50-3 at ¶ 4; Doc 47-3 at Ex. 2).

On November 27, 2017, Wasiunec sent a reservation of rights letter on behalf of Allianz to Groppe (the "ROR Letter"). (Doc. 50-3 at ¶ 6; Doc. 54-2 at ¶ 19; Doc 47-3 at Ex. 3). The ROR Letter denied any Allianz obligation to defend or indemnify Luxottica pursuant to the Policy. (Doc. 47-3, Ex. 3). Allianz, nevertheless, initially defended Luxottica in the Underlying Lawsuit.

### E.    Allianz Denies Coverage

On August 7, 2020, Allianz sent correspondence to Groppe. (Doc. 45). This correspondence stated that Allianz has "reevaluated and reassessed its Reservation of Rights Letter of November 27, 2017." (*Id*. at PageID 700). The correspondence provided an overview and timeline of the Underlying Lawsuit. (*Id*. at PageID 700–709). And, based on the claims of the Underlying Lawsuit, Allianz determined that the claims against Luxottica did not fall within the insurance policy. (*Id*. at PageID 711). Thus, Allianz denied coverage and requested that Luxottica reimburse Allianz for fees and costs already paid to defend Luxottica. (*Id*. at PageId 712).

### F.    Action Before This Court

Following Allianz's denial of coverage, Luxottica filed the instant action, asserting five claims against Allianz: (1) declaratory relief regarding Allianz's duty to defend; (2) declaratory relief regarding Allianz's duty to indemnify; (3) breach of contract for failure to pay defense costs; (4) declaratory relief regarding Allianz's claim for reimbursement; and (5) breach of the duty of good faith. (Doc. 1). In return, Allianz asserted the following counterclaims against Luxottica: (1) breach of implied contract for reimbursement; and (2) equitable restitution. (Doc. 17).

Allianz also requested that the Court bifurcate Luxottica's duty to defend claim from its breach of the duty of good faith claim. (Doc. 15). Luxottica opposed that motion, to which opposition Allianz replied. (Doc. 20, 21). However, both requested expedited resolution of the duty to defend claim, given this claim may assist with the resolution of all other claims. Accordingly, the parties filed the instant cross-motions for summary judgment, which motions are now ripe for resolution.

## II.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must

9

be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

Allianz argues that it has no duty to defend Luxottica in the Underlying Lawsuit because: (1) the claims of the Underlying Lawsuit do not trigger coverage under the terms of the OPL Endorsement; and/or, (2) an exclusion to coverage applies. (*See generally* Docs. 47-1, 52). Luxottica argues the opposite: (1) the broad language of the OPL Endorsement provides coverage for the Underlying Lawsuit; and (2) no exclusion to coverage applies. (*See generally* Docs. 50-1, 54).

### A. Allianz's Duty of Defend

"The duty of an insurer to defend is separate and distinct from the duty to indemnify." *M/G Transport Services, Inc. v. Water Quality Ins. Syndicate*, 234 F.3d 974, 979 (6th Cir. 2000) (citing *Lessak v. Metropolitan Casualty Ins. Co. of New York*, 151 N.E.2d 730 (Ohio 1958)). Under Ohio law, "whether an insurer has a duty to defend an action against an insured is initially determined by the scope of the pleadings." *Id*. at 977.[6] Thus, an insurer's duty to defend is not triggered by its actual legal liability. *NCMIC Ins. Co. v. Smith*, 389 F. Supp. 3d 535, 540 (S.D. Ohio 2019). Rather, "[t]he

---

[6] Both parties apply Ohio law.

duty attaches whenever the complaint states a covered claim, or *potentially* or *arguably* does so." *Id*. (emphasis in original).

"If none of the claims in the complaint against the insured are potentially or arguably within the scope of the insurance policy, then the insurer has no duty to defend the insured." *Insurance Co. of State of Pennsylvania v. Vimas Painting Co., Inc.*, No 4:06-CV-1048, 2007 WL 1412988, at *8 (N.D. Ohio May 10, 2007) (citing *Wedge Products v. Hartford Equity Sales Co.*, 509 N.E.2d 74 (Ohio 1987)). However, once a court determines the insurer must defend one claim within a complaint, "it must defend the entire lawsuit, even though other claims may not come within the coverage of the policy." *Holloway Sportswear, Inc. v. Transportation Ins. Co.*, 177 F. Supp. 2d 764, 769 (S.D. Ohio 2001) (citing *Preferred Mutual Ins. Co. v. Thompson,* 491 N.E.2d 688 (Ohio 1986)) (emphasis added).

Under Ohio law, the interpretation of an unambiguous insurance contract presents a question of law. *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, 667 F.3d 669, 676 (6th Cir. 2011) (*Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995)). The Supreme Court of Ohio has held "that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature." *Nationwide Mutual Ins. Co. v. Marsh,* 472 N.E.2d 1061, 1062 (Ohio 1984) (citing *Ohio Farmers Ins. Co. v. Cochran,* 135 N.E. 537 (Ohio 1922)). The party seeking to recover under an insurance policy bears the burden of establishing that the particular loss falls within the policy's insuring agreement. *State Farm Fire & Cas. Co. v. Hiermer*, 720 F.Supp. 1310, 1314 (S.D. Ohio 1988), *aff'd* 884 F.2d 580 (6th Cir.

1989).  Once the insured establishes that a particular loss falls within the policy's insuring agreement, the burden then shifts to the insurer to establish that an exclusion to coverage applies.  *Bondex*, 667 F.3d at 677 (6th Cir. 2011) (citation omitted).

When interpreting insurance policies under Ohio law, a court considers the following:

> Where the policy language sets forth the relevant coverages and exclusions in unambiguous terms, we must apply the terms as written, according to their plain and ordinary meaning.  Specialized definitions provided in the policy govern notwithstanding their ordinary meaning, but ambiguous coverage or exclusion terms will be construed strictly against the insurer and liberally in favor of the insured.  To establish ambiguity, the insured must provide a reasonable alternative understanding of the relevant policy language, but challenges to the fairness of the policy will not suffice.

*Id*. (internal quotations and citations omitted) (citing Ohio law).

It is with these legal principles in mind that the Court considers whether, under the Policy, Allianz owes Luxottica a duty to defend in the Underlying Lawsuit.  As discussed *infra*, the Court finds that Allianz owes such duty to defend.

**B.    The Parties' Positions**

Both parties argue that the OPL Endorsement is the provision of the Policy that dictates whether coverage extends to the Underlying Lawsuit.  To reiterate, that provision provides:

> We will pay those sums that the insured legally obligated to pay as damages because of any error or omission in providing professional services in the practices of optometry or optical services by your or on your behalf.  Such services can be provided by any optician, optometrist or anyone with whom

12

> you have a contract, agreement, or relationship including independent contractors and volunteers. Such services include but are not limited to examinations, referrals, prescribing, fitting filing,[7] selling, demonstration and distributing ophthalmic lenses and similar products, but do not include surgery.

(Doc. 54-2 at ¶ 5–6).

Luxottica contends that the OPL Endorsement's language is broad, providing sweeping coverage for the full range of optical services offered by LensCrafters. (Doc. 50-1 at PageID 912). Luxottica argues that the coverage for "optical services" expands beyond services provided by professional optometrists and extends to services related to its sale of eyewear. Thus, given this language in the policy, the policy should be interpreted broadly in favor of coverage. (*Id*.) And, because the claims of the Underlying Lawsuit broadly relate to providing optical services, Allianz has a duty to defend Luxottica in the Underlying Lawsuit. (*Id*. at PageID 913–14).

Allianz contends that the claims of the Underlying Lawsuit do not fall within the scope of the OPL Endorsement. First, Allianz argues that the OPL Endorsement only provides coverage for negligence or the medical malpractice of Luxottica's medical personnel, staff, or technicians because the OPL Endorsement covers "any error or omission in providing professional services in the practices of optometry or optical services." (Doc. 47-1 at PageID 739). Thus, because the Underlying Lawsuit is focused

---

[7] Luxottica contends that this is a typo and meant to provide coverage for "fitting[, and] fil[l]ing" not "fitting filing." (Doc. 50-1 at PageID 913). Allianz disputes this "typo." (Doc. 52 at PageID 1862). Whether the policy details filing or filling is not a material dispute of fact, given this list includes <u>but is not limited to</u> the outlined optical services. The Court, moreover, takes no position on this dispute, and whether the OPL Endorsement reads filing or filling does not weigh into this Court's decision.

on Luxottica's advertising of the AccuFit system and the manufacturing of its precision lenses, both actions that are unrelated to any professional services or malpractice, there is no coverage.

Allianz also contends that coverage is precluded by two of the OPL Endorsement's exclusions.  (Doc. 47-1 at PageID 742).  Specifically, Allianz argues that the OPL Endorsement excludes coverage for: (1) "[d]amages expected or intended by the insured, caused intentionally at the direction of the insured, or based on attendant circumstances [that] should have been reasonably foreseen by the insured," (Doc. 47-1 at PageID 472 (quoting Doc. 1-1 at PageID 95)); and, (2) damages incurred as a result of "[w]arranties and representations made at any time with respect to the fitness, quality, durability, performance or use" of Luxottica's product.  (Doc. 47-1 at PageID 743 (quoting Doc. 1-1 at PageID 55)).  Allianz again points to the claims of the Underlying Lawsuit, arguing that the claims of the Underlying Lawsuit relate to Luxottica's false advertising of the AccuFit system and that the claims require some level of intent to deceive or actual knowledge of Luxottica's deceit.  (Doc. 47-1 at PageID 472–73).

### C.     Analysis of Allianz's Duty to Defend

Upon review of the Policy, the Court finds that Allianz owes a duty to defend. First, the Court is unpersuaded by Allianz's argument that the OPL Endorsement only applies to claims related to professional optometry services, such a negligence or medical malpractice claims.  The OPL Endorsement broadly covers "optical services" provided by Luxottica.  Those services reach beyond services provided by professional optometrists, including <u>but not limiting to</u> examinations, prescriptions, **<u>sales</u>**, and

14

**distributions**.  (Doc. 54-2 at ¶ 5–6).  Further, the plain language of the OPL

Endorsement provides coverage for "anyone with whom you have a contract, agreement,

or relationship."  (*Id.*)  Thus, the Court finds that the OPL Endorsement reasonably

covers "optical services" provided by Luxottica employees, not only professional

services provided by professional optometrists.

However, the analysis does not stop there.  The main issue in dispute is whether

the claims of the Underlying Lawsuit fall within the scope of coverage.

The claims of the Underlying Lawsuit allege that Luxottica falsely advertised

and/or omitted material facts related to its ability to manufacture prescription eyeglasses

that were five times more precise than traditional prescription eyeglasses.  The claims

allege that Luxottica pushed the AccuFit system to customers, advertising that the

AccuFit product could provide a better lens given its precision, pupillary-distance

measurements.  The claims allege that, even though Luxottica pushed this product, these

representations were false because Luxottica's "decades-old" manufacturing made it

impossible for Luxottica to actually manufacture such precision lenses.

The Court finds that these claims **arguably** fall within coverage.  Although

advertising and manufacturing are not explicitly stated in the list of "optical services," the

OPL Endorsement's list of "optical services" is a non-exhaustive list.  Had the parties

intended to restrict coverage to professional optometry services, or the list of services in

the endorsement, the policy could have been drafted in such a manner as to clearly and

explicitly limit such coverage.  Moreover, the Court finds persuasive that the list of

services in the OPL Endorsement ranges from examinations to prescriptions to sales to

distributions.  A plain reading (and common sense) indicate that the broad range of Luxottica's activities, including advertising and manufacturing, arguably fall within the scope of coverage.

The Court is also unpersuaded by Allianz's arguments that an exclusion to coverage in the OPL Endorsement applies.  Allianz first argues that the Underlying Lawsuit is excluded from coverage because the gist of the Underlying Lawsuit is Luxottica's knowledge and/or intent to deceive customers with the AccuFit system.  Thus, the Underlying Lawsuit is excluded from coverage because the OPL Endorsement includes an intentional injury exclusion, excluding coverage for "[d]amages expected or intended by the insured, caused intentionally at the direction of the insured, or based on attendant circumstances [that] should have been reasonably foreseen by the insured." (Doc. 47-1 at PageID 472).

"[I]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended.  It is not sufficient to show merely that the act was intentional."  *Physicians Ins. Co. of Ohio v. Swanson*, 569 N.E.2d 906, 911 (Ohio 1991).  Moreover, "if a plaintiff can recover against an insured based merely on negligent conduct, a duty to defend applies notwithstanding the existence of a [k]nowing [v]iolation provision in the insurance contract."  *Burlington Ins. Co. v. Eden Cryogenics LLC*, 126 F. Supp. 3d 947, 957 (S.D. Ohio 2015); *see also Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19 (1994) ("[a]n insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy").  "[T]he court

may examine the factual allegations in the underlying complaint to determine whether they support a cause of action within the scope of the policy's coverage." *NCMIC*, 389 F. Supp. 3d at 544 (quotation and citations omitted).

Allianz argues that "<u>every</u> count in the Underlying Lawsuit here alleges that Luxottica knew, should have known, or intended to deceive the Underlying Plaintiffs about the (in)accuracy of the eyeglass products they ultimately purchased based on those misrepresentations." (Doc. 52 at PageID 1874 (emphasis added)). Allianz contends that this makes the intentional act and intentional injury so intrinsically tied that the act necessarily resulted in the harm. (*Id.* (citing *Allstate Co. v. Campbell*, 942 N.E.2d 1090 (Ohio 2010)). Moreover, Allianz suggests that because all claims allege intent and/or knowledge to deceive, and the Underlying Plaintiffs allege no negligence claims, the Court should find that the intended injury exclusion unambiguously applies.

In this case, there are certainly allegations in the Underlying Lawsuit related to Luxottica's intent and knowledge to deceive its consumers. For example, Count I of the Underlying Complaint for violation of the California Business and Professions Code alleges that "[Luxottica] committed unlawful, unfair, and/or fraudulent business acts or practices by, among other things, engaging in conduct that [Luxottica] knew or should have known was likely to and did deceive the public, including Plaintiffs and other members of the Class." (Underlying Complaint at ¶ 91). Count II alleges that "[Luxottica] committed such violations of the [California] False Advertising law with actual knowledge or knowledge fairly implied on the basis of objective circumstances." (*Id.* at ¶ 98).

17

However, not all claims include allegations of intent or knowledge. For example, Count IV alleging violation of the Florida Deceptive and Unfair Trade Practices Act contains no allegations related to Luxottica's intent or knowledge. (Underlying Complaint at ¶¶ 112–119). A review of Counts V and VI for violations of the New York Business Code reveals the same. (*Id*. at ¶¶ 120–37). And, the Underlying Plaintiffs allege an alternative to knowledge or intent: "[Luxottica]'s **omission** of the material fact that its prescription eyeglasses were not 'five times more accurate' was likely to mislead reasonable consumers acting reasonably under the circumstances." (*Id*. at ¶ 126).[8]

These allegations support a finding that the Underlying Plaintiffs may succeed in the Underlying Lawsuit (at least on one or some claims) without proving knowledge or intent to deceive on the part of Luxottica. These claims arguably fall outside of the knowing violation exception and within coverage.[9] And, once a court determines the insurer must defend one claim within a complaint, "it must defend the entire lawsuit, even though other claims may not come within the coverage of the policy." *Holloway Sportswear*, 177 F. Supp. 2d at 769.[10]

---

[8] Luxottica's omission of material fact is also an alleged common question of law for the class in the Underlying Lawsuit: "Whether [Luxottica] omitted material facts about its manufacturing process, including the fact that AccuFit measurements could not be converted into the manufactured lenses." (Underlying Complain at ¶ 81).

[9] At the very least, there are ambiguities in coverage that should be resolved in favor of the insured.

[10] Allianz also argues that the claims in the Underlying Lawsuit cannot be considered any "error or omission" related to optometry services under the OPL Endorsement, again because Luxottica's alleged intent and knowledge to deceive customers cannot constitute an error or omission. This argument similarly fails.

Allianz also contends that the OPL Endorsement excludes coverage for "[w]arranties and representations made at any time with respect to the fitness, quality, durability, performance or use" of Luxottica's product. (Doc. 47-1 at PageID 743 (citing Doc. 1-1 at PageID 55)). But, a **full** reading of this section in the OPL Endorsement clearly indicates that this exclusion does not apply.

"Your work," as defined by the policy, includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" (Doc. 1-1 at PageId 55). However, the OPL Endorsement's exclusion for "your work," excludes coverage for "[c]osts or damages incurred **for corrections, repair or replacement** of … Your work, arising out of the work or any portion thereof." (*Id*. at PageID 95 (emphasis added)). The allegations in the Underlying Lawsuit do not seek costs or damages to correct, repair, or replace the Underlying Plaintiffs' eyewear. (Underlying Complaint at Prayer for Relief, PageID 1110). Thus, Allianz has not demonstrated that this exclusion applies.

Finally, the Court finds persuasive that the insurance policy generally excludes coverage of "personal and advertising injury," which term is specifically defined in the policy as follows:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;

c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.     Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.     The use of another's advertising idea in your "advertisement"; or

g.     Infringing upon another's copyright.

(Doc. 1-1 at PageID 54).

"Specialized definitions provided in the policy govern notwithstanding their ordinary meaning." *Bondex Int'l*, 667 F.3d at 677–78 (citation and quotation omitted). <u>This **specialized definition** does not include any injuries arising out of false advertising or deceptive business practices</u>. Any exclusions throughout the Policy to coverage for "personal and advertising injury" do not apply in this case. Moreover, the parties (specifically Allianz) could have included such claims in this specific and exhaustive list. Thus, when interpreting the Policy as a whole, the fact that these claims are not included in the "personal and advertising injury" exclusions furthers Luxottica's arguable claim that Allianz owes it a duty to defend in the Underlying Lawsuit.

In sum, Luxottica has demonstrated that the Underlying Lawsuit arguably falls within the Policy and coverage applies. Allianz has not demonstrated that an exclusion to coverage applies. Thus, Allianz owed Luxottica a duty to defend.

## IV. CONCLUSION

Based upon the foregoing:

1. Luxottica's motion for summary judgment (Doc. 50) on Luxottica's duty to defend claim is **GRANTED**.

2. Allianz's motion for summary judgment (Doc. 47) on Luxottica's duty to defend claim is **DENIED**.

3. The Court **DECLARES** that Allianz owes Luxottica a duty to defend in the Underlying Lawsuit. Allianz **SHALL** reimburse Luxottica for any defense costs Luxottica was forced to incur as a result of Allianz's denial of coverage.

4. Allianz's motion to bifurcate (Doc. 15) is **DENIED** as moot.[11] The Calendar Order (Doc. 43) shall proceed as scheduled.

**IT IS SO ORDERED.**

Date:  7/28/2021

Timothy S. Black
United States District Judge

---

[11] Allianz argued in that motion that the Court should bifurcate discovery on Luxottica's duty to defend and breach of the duty of good faith claims, arguing that resolution of the duty to defend claim "should be dispositive" of Luxottica's other claims. (Doc. 15). Having resolved the duty to defend claim, bifurcation is now unnecessary, and the motion is denied as moot.