## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| LUXOTTICA OF AMERICA INC., | : | Case No. 1:20-cv-698 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| ALLIANZ GLOBAL RISKS US | : | |
| INSURANCE COMPANY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER RESOLVING DISCOVERY MOTIONS (Docs. 81 and 82)

This civil action is before the Court on Plaintiff's motion to compel documents from Defendant (Doc. 81) and the parties' responsive memoranda (Docs. 87 and 92). Also before the Court's is Defendant's omnibus discovery motion to compel documents from Plaintiff and for other discovery relief (Doc. 82) and the parties' responsive memoranda. (Docs. 90 and 95). The Court has also reviewed several of the parties' documents submitted for *in camera* review.

## I. BACKGROUND

Luxottica of America, Inc. ("Luxottica"), an eyeware retailer, is insured by Allianz Global Risks U.S. Insurance Company ("Allianz"). (Doc. 1 at ¶¶8, 12-15). Luxottica is actively defending class-action lawsuits ("underlying litigation") related to the marketing of its "AccuFit" service. (*Id.* at ¶26).[1] Allianz initially paid for Luxottica's defense in the

---

[1] The cases were consolidated under the caption *Allegra, et al. v. Luxottica Retail North America*, 17-cv-5216 PKC-RLM (E.D.N.Y 2017).

underlying litigation. (*Id.* at ¶¶34, 35).  Three years later, Allianz reversed course, arguing that the claims asserted against Luxottica in the underlying litigation were not covered by the policy.[2] (*Id.* at ¶37).  Allianz stopped defending Luxottica in the underlying litigation and asked Luxottica to reimburse it for expenses already paid. (*Id.* at ¶42).

Luxottica filed the present case to, *inter alia*, compel Allianz to pay for its defense in the underlying litigation. (*See* Amended Complaint, Doc. 83).  Luxottica also asserts a breach of contract, a duty to defend, and a bad-faith claim against Allianz. (*Id.*).  Allianz has counterclaimed for the amounts paid. (Doc. 89 at PageID# 3561-62).  Diversity of the parties is the basis for the Court's jurisdiction. (*Id.* at PageID# 3508).

The parties charted a litigation course whereby the Court would first decide the issue of the duty to defend. (Docs. 47 and 50).  On full briefing, the Court found that Allianz had a duty to defend Luxottica in the underlying litigation. (Doc. 55).  Allianz, perhaps with some wavering, has resumed paying for Luxottica's defense costs in the underlying litigation. *See e.g.*, Notation Order of January 28, 2022.

Now the parties have run into several discovery disputes.  The Court has conducted more than one informal discovery conference to no avail.  The parties have filed briefing and submitted documents for *in camera* review.  The Court duly resolves the disputes properly before it

---

[2] There are several policies. (*See* Doc. 83). The inter-relationship between those policies is not relevant here, so the Court will regard them as a unified "policy" for ease.

## II. STANDARD OF REVIEW

Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to produce documents as requested under Rule 34. Fed. R. Civ. Pro. 37(a)(3)(B)(iv). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Martin v. Select Portfolio Serving Holding Corp.,* No. 1:05–cv–273, 2006 U.S. Dist. LEXIS 68779, at *2 (S.D. Ohio Sept. 25, 2006) (citing *Alexander v. Fed. Bureau of Investigation,* 186 F.R.D. 154, 159 (D.D.C.1999)).

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper–Jarrett, Inc.,* 424 F.2d 499, 500–01 (6th Cir. 1970). However, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.,* 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)).

The party moving to compel discovery must certify that he "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or

discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also* S.D. Ohio Civ. R. 37.1.

The burden of establishing a claim of privilege rests with the party asserting it. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006); *Glazer v. Chase Home Fin. LLC*, No. 1:09-CV-1262, 2015 WL 12733393, at *2 (N.D. Ohio June 15, 2015). If a claim of privilege is challenged, the party asserting it must establish each element by competent evidence. *See Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010); *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07-CV-1190, 2010 WL 4117552, at *5 (S.D. Ohio Oct. 19, 2010) (stating that a party must establish the factual predicate for a claim of privilege by "competent evidence").

Communications are not discoverable if protected by attorney-client privilege. The attorney-client privilege applies "[w]here legal advice of any kind is sought*." Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). When a communication involves both legal and non-legal matters, courts "consider whether the predominant purpose of the communication is to render or solicit legal advice." *Id.* at 420. This predominant purpose "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer." *Id.* at 420–21.

The work-product doctrine is "broader" than attorney-client privilege. *In re*

4

*Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). "[T]he work product doctrine protects any document prepared in anticipation of litigation by or for the attorney." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (citing *In re Special September 1978 Grand Jury*, 640 F.2d at 62). However, "[a]pplication of Rule 26(b)(3) is not limited solely to attorneys. Rather, the Rule explicitly states that it applies to documents and tangible things prepared by or for the party and the party's representative." *Eversole v. Butler Cty. Sheriff's Off.*, No. C-1-99-789, 2001 WL 1842461, at *2 (S.D. Ohio Aug. 7, 2001).

### III. ANALYSIS

Luxottica seeks information related to claim handling materials. (Doc. 81). Allianz asserts these are protected by the work-product doctrine, attorney client privilege, and argues that some of the requests seek irrelevant documents. (Doc. 87). Similarly, Allianz seeks documents related to Luxottica's defense in the underlying litigation and a host of other relief to which Luxottica has put forth a variety of defenses.

#### A. Indemnity reserve data in redacted emails

Allianz has redacted indemnity reserve information from 38 emails it produced to Luxottica. (Doc. 87 at 6). Luxottica has moved to compel full production of these emails. (Doc. 81).

"[I]ndemnity reserves provide a measure of the insurer's total expected exposure on a given claim based upon information known at that time and reasonable investigation." *1550 Brickell Assocs. v. QBE Ins. Corp.*, No. 07-22283-CIV, 2011 WL 9506, at *1 (S.D. Fla. Jan. 3, 2011). Essentially, "indemnity reserves" are a sub-category

of what the insurance industry regards as "claim reserves." While it is not perfectly clear or consistent to the Court's vantage, "claim reserves" can refer to almost anything in an insured's claim-handling file." *See Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, No. 1:03CV1322, 2006 WL 355289, at *2 (N.D. Ohio Feb. 15, 2006). On the other hand, an indemnity reserve reflects the insurer's specific exposure to the insured given the claim. *1550 Brickell Assocs* 2011 WL 9506, at *1. In either case, as one court has said, "a reserve essentially reflects an assessment of the value of the claim taking into consideration the likelihood of an adverse judgment." *Bondex Int'l, Inc.*, No. 1:03CV1322, 2006 WL 355289, at *2 (N.D. Ohio Feb. 15, 2006). For that reason, reserves are generally considered privileged, either as work-product or attorney-client communication.

Ohio has established an exception to that general rule for cases alleging bad-faith denials by an insurer. That exception was announced in a case called *Boone v. Vanliner Insurance Company*. 2001-Ohio-27, 91 Ohio St. 3d 209, 744 N.E.2d 154. The court in *Boone* stated:

> we hold that in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage. At that stage of the claims handling, the claims file materials will not contain work product, i.e., things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists.

*Boone v. Vanliner Ins. Co.*, 2001-Ohio-27, 91 Ohio St. 3d 209, 213–14, 744 N.E.2d 154, 158.

Courts have diverged on how to apply the holding of *Boone*. An Ohio court of

appeals decision, *Garg v. State Auto*, would make the inquiry simple. 2003-Ohio-5960, ¶ 11, 155 Ohio App. 3d 258, 261, 800 N.E.2d 757, 759. If the sought information predates the denial of coverage and "may cast light on whether the handling or denial of the claim was made in bad faith," it is unworthy of protection under either attorney-client privilege or the work product doctrine. *Id.* Meanwhile, a Southern District of Ohio case, applying *Boone*, stretches the exception such that it applies to material outside of the claims-handler's file. *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. CIV A 206-CV-899, 2007 WL 1500899, at *5 (S.D. Ohio May 18, 2007). Other cases have distinguished *Boone* almost to the vanishing point. The court in *Scott v. Allstate* held reserves were not "relevant" because, under Ohio law, intent is not a necessary element of a bad faith insurance denial claim. *Scott v. Allstate Indem. Co.*, No. 4:05 CV 0076, 2005 WL 8166082, at *3 (N.D. Ohio Dec. 22, 2005).

A more nuanced approach has emerged in federal diversity cases. Under this approach, the *Boone* exception applies to attorney-client communications but not the work-product doctrine. *See Zigler v. Allstate Ins. Co.*, No. 1:06CV2112, 2007 WL 1087607, at *2 (N.D. Ohio Apr. 9, 2007); *Hoskins v. Liberty Mut. Grp., Inc.*, No. 2:19-CV-5441, 2020 WL 7201111, at *2 (S.D. Ohio Dec. 4, 2020). The reason for this distinction is that the *Boone* exception is a matter of state common law. *See Zigler*, 2007 WL 1087607, at *2. As such, the *Boone* exception does not disturb work-product protections, which originate in Federal Rule of Civil Procedure 26(b)(3). *Id.*

The Court finds this last approach is the way to go—not least because the Sixth Circuit has explicitly stated that "[i]n a diversity case, the court applies federal law to

resolve work product claims and state law to resolve attorney-client claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). Thus, the Court will not apply *Boone* to work-product claims.

Here, based on its *in camera* review, the Court finds there is sufficient evidence that indemnity reserves figures redacted from emails were indeed prepared in anticipation of litigation and deserve protection as work-product. The evidence of this is contextual but not difficult to understand. Indemnity reserves reflect the insurer's exposure to the insured. All redacted emails take place after Allianz, internally at least, had decided or was seriously considering that it would decline coverage for at least some portions of the claims under the policy. Of course, it is a well-known and undisputed fact of this case that the Allianz made a decision to deny coverage after it had recognized coverage and started to pay defense costs. A possible reversal like this on a policy of this size would almost surely raise the prospect of litigation with the insured. The indemnity reserves, meanwhile, always reflect "exposure" to the insured. *1550 Brickell Assocs* 2011 WL 9506, at *1. Putting all this altogether, the Court concludes the redacted figures in the emails are indeed work-product.

The Court finds Luxottica's arguments for disclosure unpersuasive. Luxottica points out that much of the correspondence is between non-lawyers. (Doc. 92 at PageID# 3729). But long-established authority dictates that the question is whether the documents were prepared in anticipation for litigation. *Eversole*, 2001 WL 1842461, at *2 (S.D. Ohio Aug. 7, 2001). Luxottica's argument is thus unpersuasive.

Luxottica also attempts to draw a line through June 18, 2020—the date an Allianz

claims specialist first mentioned the possibility of litigation. Luxottica argues the pre-June 18 emails can have no work-product protection because Allianz did not anticipate litigation until a claims specialist explicitly raised the prospect of litigation in a June 18 email. (Doc. 92 at 3 n.2). That is an overly simplistic marker of a party's "anticipation of litigation." The Court has explained why the facts of this case demonstrate that Allianz would have anticipated litigation at an earlier time.[3]

Luxottica is closer, but still falling short in demanding that, in the post-June 18 emails, "Allianz must show that anticipated litigation was the 'driving force behind the documents' preparation." (Doc 79 at PageID# 2428). The quoted language comes from a Sixth Circuit case that lays out a standard for identifying documents subject to work-product protection. *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009). In particular:

> Making coverage decisions is part of the ordinary business of insurance and if the "driving force" behind the preparation of these documents was to assist Professionals Direct in deciding coverage, then they are not protected by the work-product doctrine. *Roxworthy*, 457 F.3d at 595. As the magistrate recognized, whether the documents at issue here were in fact prepared in anticipation of litigation can only be determined from an examination of the documents themselves and the context in which they were prepared.

*Id.*

Here, of course, the indemnity reserves did not seem to assist the insurer in

---

[3] To be sure, the Court is equally unimpressed with the approach advocated by Allianz. Allianz wants to time-stamp the "anticipated litigation" threshold as the date it sent a "rights and reservations" letter to Luxottica—November 27, 2017. Allianz is correct that "documents may be considered created 'in anticipation of litigation' after a Reservation of Rights letter has been issued." (Doc. 87 at 13 (citing *St. Paul Fire & Marine Ins. Co. v. ConAgra Foods, Inc.*, 2008 WL 222518, at *2 (S.D.Ohio Jan. 25, 2008) (emphasis added by Court))). But "may be" is not must and context will matter.

deciding coverage. As the Court has explained, they appear functionally as an outgrowth of an internal decision regarding the scope of the coverage. For that reason, they seem to reveal work-product that would anticipate litigation. And, as also explained, the Court has found "the context in which" the indemnity reserves "were prepared" a particularly important consideration. *Id.* Given this context, and the general purpose of indemnity reserves, litigation would seem to be the driving force behind the setting of the redacted reserves figures at-issue.

In a footnote, Allianz argues partial waiver. (Doc. 79 at PageID# 2428 n.5). The Court cannot fully grasp the argument as the Court is unsure which parts of which documents were disclosed. In any case, the Court agrees with Allianz that, to overcome a work-product claim, the disclosure must be made to an adversary. *See In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 306 (6th Cir. 2002). There is no indication of that here.

Accordingly, Allianz has properly redacted its indemnity reserves figures on its 38 redacted emails. To be clear, by Allianz privilege log numbers, those emails are as follows: 1306, 1322, 1581, 1625, 115, 1262, 337, 1583, 342, 428, 509, 1598, 437, 1601, 759, 760, 761, 762, 764, 765, 1604, 767, 1558, 775, 177, 203, 768, 770, 771, 772, 1372, 1374, 160, 121, 391, 1381, 1269, and 134.

The Court has based this determination on a review of the documents and an application of the work-product standard. Fed. R. Civ. P. 26(b)(3). While Allianz has appropriately tailored its redactions, the Court would reject more categorical approaches advocated by Allianz. The Court, in other words, does not accept the notion that claim or

indemnity reserves are per se "irrelevant" to a bad-faith claim, as will be discussed more in depth below.

Put another way, the Court has found no reason to apply special rules or presumptions to reserves data when work-product is claimed over them. As with other documents, the proponent must demonstrate they were prepared in anticipation of litigation. Allianz has done so with regard to its redacted emails detailing indemnity reserves.

### B. Allianz's emails with counsel

Allianz also claims privilege over redacted or totally withheld documents with its counsel—either because they are dated post-denial of coverage and thus outside of the *Boone* exception or because they are work-product. (Doc. 87 at 11-13). The Court has reviewed these documents *in camera* and finds they do indeed deserve protection as work-product. Redactions at Allianz privilege log numbers 1597, 520, 10, 230 consist of the impressions and opinions of outside counsel or messages sent to outside counsel so they may express an opinion. *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."). Privilege log number 153 is a document provided to outside counsel at his request and thus warrants work-product protection. *See Bard v. Brown Cnty.*, 2017 WL 3129802, at *3 (S.D. Ohio July 21, 2017). The *in camera* review of this document clearly demonstrates that it is work product.

Luxottica argues that these documents are not work-product and that the *Boone* exception applies. (Doc. 92 at 10-11). Based on the Court's in camera review, the Court

finds they are work-product. Thus, the *Boone* exception does not apply. Accordingly, the following documents may remain either fully withheld or redacted as the case may be: 1597, 520, 10, 230, 153.

### C. Relevance objections to other Luxottica requested documents

Allianz completely withholds a series of 13 documents that contain "only reserve data…." (Doc. 87 at 17). For this reason, Allianz argues, they are irrelevant to a bad faith claim and not discoverable for that reason. (*Id.*).[4] This argument reprises a familiar split both among courts and the parties in this case.

In particular, the courts that reject a broad reading of *Boone* also tend to also hold that reserves information is irrelevant to a bad-faith claim. For example, the Court in *Bondex* states:

> [T]his court agrees that evidence of the amount of reserves is not relevant because it is not necessarily based on a full knowledge of the facts and the law of the case. Instead, the number most often reflects a business decision, and a business decision, while perhaps of interest to plaintiffs, is not relevant to the litigation.

*Bondex*, No. 1:03CV1322, 2006 WL 355289, at *3 (N.D. Ohio Feb. 15, 2006).

On the other hand, other courts have held that claims reserves information is relevant if it "may cast light" on a bad-faith denial. *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 442 (6th Cir. 2009); *Garg v. State Auto. Mut. Ins. Co.*, 155 Ohio App.3d 258, 800

---

[4] Allianz's introduction to this point briefly raises the possibility of a work-product claim. (Doc. 87 at 20) ("Case law thus confirms that the *Boone* exception does not render reserves discoverable in a bad faith case. Reserves data is work product, and work product is not subject to the *Boone* exception. The *Boone* exception only applies to documents which may "cast light on bad faith" by a defendant.). But there is no discussion of these documents as work product. Allianz's arguments hinge completely on irrelevance.

N.E.2d 757 (2003).

With regards to relevance, the Court finds the "may cast light" approach is the better guide. To start, the approach better accords with the broad standard for relevance within discovery.[5] Moreover, the "may case light" standard has support from the Sixth Circuit. *See In re Pros. Direct Ins. Co*., 578 F.3d at 442 (6th Cir. 2009). Finally, the view that reserves are <u>never relevant</u> to a bad-faith claim is so blunt as to be unpersuasive. The Court acknowledges that, in any given case, reserves figures may simply be set in a regular course of business, almost as an after-thought, and provide no real insight into whether the insurer lacked a reasonable justification to deny a claim—the crucial question on a bad-faith denial. But it is not difficult to imagine a scenario where a reserve figure *does* have a bearing on a bad-faith denial—a curiously revised reserve amount, for example—or could lead to evidence of the same. For these reasons, the Court will determine relevance with regards to the "may cast light" standard. It now turns to its *in camera* review.

Privilege log numbers 1182, 1389, 1636, 1458 are auto-generated messages in response to actions taken regarding reserves.[6] The Court questions whether all of these

---

[5] "Under the Federal Rules, a party may discover any nonprivileged matter that is relevant to any party's claim or defense. Fed.R.Civ.P. 26(b)(1). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Gardner v. Norfolk S. R. Co.*, 307 F.R.D. 467, 469 (N.D. Ohio 2015) (cleaned up). It seems reasonable that reserves figures could, depending on the context, show why.

[6] This document is misidentified either in Allianz's opposition (Doc. 87 at 20, suggesting its privilege log number 1656) or in the privilege log (Doc. 81-2). Above, the Court has assumed the privilege log is accurate. To avoid doubt, the Court clarifies that it is talking about the email described on page 1, row 1 of the privilege log. (*Id.*).

actually contain "reserves data"—because only one of them says anything about the actual amount set on reserve—but it has no doubt that they are relevant because they "may cast light" on bad-faith decision-making or lead to evidence regarding the same. The Court will order them produced. The Court also finds the messages contained in 522, 1626, 1627 could lead to discoverable evidence of bad-faith and therefore will order those documents produced as well.

Allianz privilege log numbers 520, 1632 and 1370 are clearly relevant, but also include indemnity figures the likes of which this Court has already found is protectable work product. Accordingly, Allianz privilege log numbers 520, 1632 and 1370 shall be produced, but Allianz may redact indemnity figures as work product.

The Court can determine no basis for relevance of Allianz privilege log numbers 193, 1593 or 1594. Those may remain withheld.

### D. Luxottica's communications with Blank Rome and the question of shared privilege

A law firm identified as Blank Rome defends Luxottica in the underlying litigation. (Doc. 82 at PageID# 2562). Luxottica claims to have shared information with Allianz regarding the underlying litigation. (Doc. 8 at PageID# 3678). But Luxottica has also withheld communications with Blank Rome, claiming attorney-client privilege or the work-product doctrine. (*Id.*). In support of disclosure, Allianz argues that Luxottica and Allianz enjoy a "shared privilege" or a "common interest" in the underlying litigation. (Doc. 82 at PageID# 2565).

Under the "common interest doctrine," "communications between an insured and

14

its attorney connected with the defense of an underlying litigation are normally not privileged vis-a-vis the insured's carrier in a subsequent action." *U.S. Fire Ins. Co. v. City of Warren*, No. 2:10-CV-13128, 2012 WL 2190747, at \*6 (E.D. Mich. June 14, 2012). Luxottica argues, in essence, there is no common interest and therefore no shared privilege with regards to coverage. (Doc. 90 at PageID# 3687).

The application of the "shared privilege" doctrine to the facts here is far from straightforward. To start, much more frequently the doctrine is discussed in terms of waiver: two parties who with a common legal interest who share information with each other cannot be said to have waived a privilege as to third parties. *See, e.g., Kerner v. Terminix*, No. 2:04-cv-0735, 2008 WL 321267 (S.D. Ohio Jan. 31, 2008). A shared privilege between Allianz and Luxottica as against third parties, though, has little to do with the question of whether Allianz can compel Luxottica to share work-product related to Blank Rome's representation of Luxottica.

To be sure, Allianz does have some support from case law outside the Sixth Circuit. A federal district court in Florida offers some reasoning in support of Allianz's position. *See MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 613–14 (S.D. Fla. 2013). But the same court approached the situation with a fact-attentive and careful inquiry. The Court quotes from *MapleWood* at-length, in part, as an illustration:

> the Court finds that Plaintiffs and Defendant essentially were co-clients of Miller (and the related attorneys) as to the defense of the Underlying Matters and, thus, have no privilege to assert against the disclosure of communications or documents to each other which were shared between any party and Miller (and the related attorneys) on that subject. This conclusion is based on the Court's finding that

15

Plaintiffs purchased the Policy, a directors and officers liability policy with a cooperation clause, and subsequently made a claim under the Policy, effectively inviting the insurer into the Plaintiffs' relationship with its selected counsel, at least temporarily and only as to this subject matter. This is analogous to the situation in which a general liability insurer, with a duty to defend, has a shared interest with its insured for the purpose of the defense of the action, as recognized in Florida law.

Alternatively, even if Plaintiffs and Defendant were not effective co-clients, they—at a minimum—had a common legal interest in the defense of the Underlying Matters such that they are not entitled to avoid disclosure between themselves as to otherwise privileged materials. The Court's conclusion does not require Plaintiffs to disclose communications purely relating to the pending coverage dispute before this Court, but does require disclosure of all documents relating to the RRGC settlement or any of the Underlying Matters-regardless of the date.

*MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 613–14 (S.D. Fla. 2013).  The *Maplewood* court offers some support for Allianz.  Much more substantively, the *Maplewood* case stands for the idea that common legal interest theory applies to those issues where the parties are aligned but not to those issues where the parties are adversaries.

On the other hand, a case from within the boundaries of the Sixth Circuit is uncomplicatedly in support of Luxottica's position that there can be no shared privilege where coverage is disputed.  In particular, the court in *Fire Insurance Company v. City of Warren* concluded "because this [common interest] doctrine is based on the alliance of interests between an insured and its insurer, and because such an alliance of interests does not exist *where coverage is disputed*, this doctrine is not applicable, and thus insured attorney communications remain privileged with respect to the insurer." No. 2:10-CV-13128, 2012 WL 2190747, at *6 (E.D. Mich. June 14, 2012) (emphasis added).

16

Another case from within the Sixth Circuit, *Lee v. Medical Protective*, addresses differently oriented parties but applies the same principles. *See* 858 F. Supp. 2d 803, 806 (E.D. Ky. 2012) ("There is no privilege between the insured and the company as to any matters of common interest …. In matters in which the interest of the company and the insured diverge, such as a coverage issue, the company is the primary client, so that advice given to the company on such an issue by the attorney is privileged as to the insured.") (emphasis added). In other words, regardless of which party—insured or insurer—is claiming attorney-client privilege or work-product protection, the information is not discoverable if it relates to a disputed coverage issue and otherwise meets the relevant standard for privilege.

The Court finds the reasoning of *Fire Ins. Co.* and *Lee* most persuasive. *Fire Ins. Co.* and *Lee* come from courts within the Sixth Circuit. Much more importantly, these cases are fined-tuned to the alignment of an insurer and an insured in a case like this one. In every insurance dispute in a similar posture, the insured and insurer will be aligned on some issues (a strong defense or quick settlement of the underlying litigation) and unaligned on others (coverage and the duty to defend). It makes good sense, to the Court's mind, to recognized shared privilege as to the issues on which they are aligned and to reject it as to those issues where they are unaligned.

Using this approach, the Court has undertaken an *in camera* review of the at-issue communications between Luxottica and counsel to determine if they relate to an issue on which the parties are aligned or in conflict. The Court has, in particular, reviewed the following Luxottica privilege log numbers: 24, 26, 27, 28, 30, 31, 36, 39, 52, 62, 67, 95,

96, 102, 103, and 260.

The Court finds that all the reviewed documents involve attorney-client communication all of which pertains to either the issue of coverage (which is still disputed) or to the issue of duty to defend.  As to the communications regarding a duty to defend, those communications were made when that issue was in dispute or when litigation would have been reasonably anticipated.  Accordingly, Luxottica does not have a common legal interest with Allianz on the subjects of these communications. Accordingly, all of Luxottica's communications and/or documents may remain redacted or withheld as the case maybe.  The Court will thus deny Allianz's motion to compel in this regard.

The Court also notes here that Allianz requests that Luxottica document every single communication with Blank Rome regarding the underlying litigation on the privilege log. (Doc. 82 at #2582).  However, as Luxottica notes, "nowhere in Fed. R. Civ. Pro. 26(b)(5) is it mandated that a document-by-document privilege log is required, if a party seeks to withhold documents based on privilege or work product."  (Doc. 90 at PageID# 3697) (citing *Durkin v. Shields*, 174 F.R.D. 475, 477 (S.D. Cal. 1997)).  In this case, the Court finds that it would be overly burdensome to require Luxottica to document every communication with Blank Rome in the large and complex litigation. The request is simply overbroad.

For the Court, the more relevant inquiry is what information does Allianz need relative to the underlying litigation in order to have a fair shot at its defenses.  Luxottica has stated exactly what it has produced to Allianz regarding the underlying litigation.

(Doc. 90 at PageID# 3687). If Allianz feels short-changed as to certain information, it should raise those issues specifically. But simply demanding a logged entry for every single communication in the underlying litigation is excessive relative to the needs of this case.

Finally, as Allianz has requested, the Court has also reviewed Luxottica's privilege log for sufficiency of the log descriptions. The Court finds the descriptions adequate given the information contained in the respective documents and will decline to order a revised log.

### E. Allianz's request that Luxottica remedy its written discovery responses

Allianz takes issue with Luxottica's responses to written discovery requests. (Doc. 82 at PageID# 2583). There are several sub-issues here, but the Court finds it does not have sufficient information to resolve the dispute. These requests will be denied as unripe. Two reasons compel this conclusion.

First, the goal posts have shifted on what the applicable written discovery requests are. Luxottica seemed unclear whether revised versions of written discovery were proposed by Allianz as the documents of record or whether they were conditional on concessions from Luxottica. (Doc. 90 at PageID# 3703). In reply, Allianz clarifies that it has served revised written discovery requests that it intends as the operative requests— but it only served them, via email, on March 21, 2022. (Doc. 95 at PageID# 3877). Thus, Allianz's revised written discovery requests come after the filing of the discovery motions and the memoranda in opposition.

Second, the Court has not held an informal discovery conference with the parties

regarding the written discovery objections. *See* S.D. Ohio Civ. R. 37.1; *see* Judge

Timothy S. Black's Cincinnati Civil Procedures at §2.[7] The present situation is a good

illustration of the need for such a conference. The un-conferenced issues are unwieldy

and still-developing. Allianz states that a shift in the posture of the underlying litigation

has occasioned a narrowing of its own requests. Luxottica states that it cannot be made

to prematurely litigate the issues in the underlying litigation. Luxottica's standing

objection to the relevance of many of the requests is indeed inexact, to the Court's mind,

but it is also unclear if Luxottica has had a chance to reformulate those objections to

respond to recent developments. Ultimately, the Court is simply without the necessary

context to apply these arguments to the question of which of the requests are potentially

irrelevant or overboard.[8] For now, the Court will permit Allianz to serve revised written

discovery requests and otherwise deny Allianz's requests to compel response to written

discovery.

### F. Other Relief Requested by Allianz

---

[7] https://www.ohsd.uscourts.gov/sites/ohsd/files//civil%20procedures%20in%20cincinnati%2011-13%20%282%29.pdf

[8] The Court offers the following thoughts only in the hope that the parties may avoid further disputes. The Court sees no improper nesting of sub-parts in Allianz's revised interrogatories. As for the revised requests for production ("RFPs"), a few seem unduly broad or irrelevant at first glance and at face value: 11, 12, 13 and 15. (Doc. 82). Other revised RFPs may be overly burdensome but such would depend on circumstances and the proffer of relevance and/or explanation of burden: 16, 20, and 22. (*Id.*). On the other hand, the Court finds it reasonable for Allianz to request documents presented to the court in the underlying litigation and is skeptical that Luxottica cannot produce documents that it "intends" to use at trial. The Court finds little reason, moreover, to limit discovery because it overlaps with the underlying litigation. It is unavoidable that, absent a bifurcation and a stay, the parties will concurrently litigate some of the issues that overlap between this case and the underlying litigation.

Allianz has requested other relief. The Court will discuss these requests only in brief.

First, Allianz requests an audit of Blank Rome's files relevant to the underlying litigation. (Doc. 82 at PageID# 2573). Allianz asserts that Blank Rome must submit to an audit because of an agreement between the parties about the provision of legal services to the insured. (*Id.*). Even assuming that that agreement is legitimate, the Court is not convinced of its power to order Blank Rome, a party that is not before it, to do anything. Moreover, the Court is also unsure of the wisdom of, essentially, enforcing a contract that heretofore has played no part in the legal proceedings before it. The Court, in its discretion, will decline to order an audit of Blank Rome—at least on an under-developed record and in an order otherwise directed to discovery obligations between the parties. Additionally, as described above, the Court struggles to figure out what more Allianz needs from the underlying litigation in order to assess its defense and indemnity obligations. Thus, Allianz's request is denied.

Similarly, the Court will avoid straying into other matters of communication between Blank Rome and Allianz. Allianz states that "[t]he Court should issue an order that Allianz be permitted to confer with AccuFit class counsel, with Luxottica's counsel involved if they wish to be." (Doc. 82 at 18). The relevant context here is some standoffishness in the relationship between Luxottica's counsel here, Allianz's counsel here, and Blank Rome. (*Id.*). The Court agrees open lines of communication are probably advisable. But it is another thing to "order" communication involving non-parties. Even if the Court had no questions about its authority to order a phone call involving a non-

21

party, the Court, in its discretion, finds it imprudent to do so. Thus, Allianz's request is denied.

Allianz states it has subpoenaed third parties and received no responsive documents or else a deficient response. (Doc. 82 at PageID# 2574). The third parties in question are Aon, the broker in the Allianz-Luxottica relationship, and Sedgwick, a claims management service which acted as an intermediary between Allianz and Luxottica. (*Id.*). While Allianz has raised these issues in discovery conferences before the Court, the Court has not had an opportunity to hear from any representatives from Aon or Sedgwick before considering the relief that Allianz requests against them. Thus, the Court has no real awareness of why Aon or Sedgwick have not responded to the subpoena, or responded with alleged deficiencies, as the case may be. Allianz's briefing says nothing of a meet-and-confer of any kind with Aon. Allianz complains of deficiencies in Sedgwick's log but has not detailed is efforts to discuss the issues with Sedgwick. For these reasons, the Court finds the dispute unripe and will decline to issue an order compelling production from either Aon or Sedgwick.

## IV. CONCLUSION

For the foregoing reasons:

1. Plaintiff Luxottica's motion to compel (Doc. 81) is granted in part as follows:

   a. Defendant-Allianz **SHALL PRODUCE** documents at Allianz privilege log numbers 1182, 1389, 1636, 1458, 522, 1626, 1627 in full. Privilege log numbers 520, 1632 and 1370 **SHALL BE PRODUCED**, but Allianz may redact indemnity figures as work product as to those documents.

   b. Plaintiff's motion to compel (Doc. 81) is **DENIED** in all other respects.

2. Defendant-Allianz's omnibus discovery motion (Doc. 82) is **<u>DENIED</u>**.

3. Defendant's motion for leave to file a sur-reply (Doc. 96) is **<u>DENIED as MOOT</u>**.

**IT IS SO ORDERED.**

Date:   <u>4/22/2022</u>

*<u>s/Timothy S. Black</u>*
Timothy S. Black
United States District Judge
